1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9          FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   SERGEI PORTNOY,                    No. CIV.S-04-1850 DFL DAD PS
12          Plaintiff,
13      v.                              FINDINGS AND RECOMMENDATIONS
14   US BANK, et al.,
15          Defendants.
16   _____/
17          This matter came before the court on July 29, 2005, for
18   hearing on defendant's motion for summary judgment, or in the
19   alternative summary adjudication.  Plaintiff, proceeding pro se,
20   appeared on his own behalf.  Christopher L. Humphreys appeared on
21   behalf of defendant.  Having considered all written materials
22   submitted in connection with motion, and after hearing oral argument,
23   the undersigned will recommend that defendant's motion be granted.
24                          **LEGAL STANDARDS**
25          Summary judgment is appropriate when it is demonstrated
26   that there exists no genuine issue as to any material fact, and that

                                    1

the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144,

157 (1970); Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

> The party moving for summary judgment
> always bears the initial responsibility of
> informing the district court of the basis for its
> motion, and identifying those portions of "the
> pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of
> material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving

party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material

fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of

Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v.

County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert.

denied, 455 U.S. 951 (1980).  The opposing party must demonstrate

that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v.

Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

In resolving the summary judgment motion, the court

examines the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any.  Rule

56(c); see also SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

1  Cir. 1982).  The evidence of the opposing party is to be believed,

2  Anderson, 477 U.S. at 255, and all reasonable inferences that may be

3  drawn from the facts placed before the court must be drawn in favor

4  of the opposing party, Matsushita, 475 U.S. at 587 (citing United

5  States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); see

6  also United States v. First Nat'l Bank of Circle, 652 F.2d 882, 887

7  (9th Cir. 1981).  Nevertheless, inferences are not drawn out of the

8  air, and it is the opposing party's obligation to produce a factual

9  predicate from which the inference may be drawn.  See Richards v.

10  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

11  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

12  **ANALYSIS**

13  This action stems from a dispute between plaintiff and

14  defendant U.S. Bank National Association ("U.S. Bank" or "bank")

15  which resulted in the closing of plaintiff's checking account at a

16  branch of U.S. Bank.  The only remaining defendant is U.S. Bank.

17  Plaintiff's second amended complaint contains a single

18  federal cause of action, the third cause of action, is brought under

19  the Expedited Funds Availability Act ("EFAA"), 12 U.S.C. § 4001 et

20  seq., and its implementing regulations, 12 C.F.R. pt. 229.  See Bank

21  One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 268

22  (1996)("The Federal Reserve Board has implemented the EFA Act through

23  Regulation CC, 12 C.F.R. pt. 229 (1995).").  The third cause of

24  action alleges that defendant failed to live up to its obligation to

25  make available to plaintiff the funds from deposited cash in a timely

26  fashion.  More specifically, it alleges that defendant violated 12

3

1  C.F.R. § 229.10, which is part of 12 C.F.R. Part 229, Subpart B, a

2  set of regulations governing when banks must make funds available

3  after they have been deposited.  Because the cash deposit at issue

4  was made by plaintiff at an automated teller machine (ATM), the

5  precise regulation at issue is 12 C.F.R. § 229.10(a)(2).  That

6  regulation provides as follows:

7          A bank shall make funds deposited in an account
           by cash available for withdrawal not later than
8          the second business day after the banking day on
           which the cash is deposited, if the deposit is
9          not made in person to an employee of the
           depositary bank.
10

11  12 C.F.R. § 229.10(a)(2).  In its motion for summary judgment,

12  defendant persuasively argues that plaintiff's federal cause of

13  action alleging a violation of 12 C.F.R. § 229.10(a)(2) must fail.

14          The undisputed facts show that plaintiff wrote two $3,000

15  checks on his U.S. Bank checking account to his wife on Thursday,

16  March 11, 2004.  Two days later on Saturday, March 13, 2004,

17  plaintiff made two $3,000 deposits in cash into his U.S. Bank

18  checking account at an ATM.  Because that Saturday was not a business

19  day, pursuant to the terms of the deposit account agreement between

20  plaintiff and defendant those deposits were deemed to have been made

21  on Monday, March 15, 2004, the next business day the bank was open.[1]

22

23          [1]  The complete title of the agreement between plaintiff and
        defendant is "Your Deposit Account: Terms and Conditions, Electronic
        Transfers, Funds Availability & Safe Deposit Box Lease Agreement,
24      Reserve Line Agreement."  A copy of the agreement is attached as an
        exhibit to the declaration of Christopher L. Humphreys submitted in
25      support of the pending motion.  The cited provision appears at page
        30 of the agreement under the heading "Determining the Availability
26      of a Deposit -- All Accounts."

1  See 12 C.F.R. § 229.19(a)(5)(i)(indicating that "funds may be

2  considered deposited on the next banking day, in the case of funds

3  that are deposited ... [o]n a day that is not a banking day for the

4  depositary bank").  Further, since the deposits were made at an ATM,

5  pursuant to 12 C.F.R. § 229.10(a)(2) defendant was not required to

6  make the funds available to plaintiff for withdrawal until Wednesday,

7  March 17, 2004, the second business day after the banking day on

8  which the cash was deemed deposited.  Thus, when defendant made the

9  funds available to plaintiff on Tuesday, March 16, 2004, it did so in

10 compliance with the EFAA and its accompanying regulations.  Indeed,

11 as defendant accurately points out, it made the necessary funds

12 available to plaintiff a day earlier than required under the law.[2]

13        The crux of plaintiff's argument is that the funds he

14 deposited on Saturday, March 13, 2004, should have been available on

15 Monday, March 15, 2004, the date on which the two $3,000 checks

16 plaintiff had written to his wife were presented for payment to

17 defendant.  In this regard, plaintiff appears to have misread the

18 deposit account agreement between himself and the bank as well as the

19 provisions of the applicable regulations.  As explained above,

20 defendant was under no obligation to make the funds deposited at the

21 ATM available to plaintiff on Monday, March 15, 2004.

22 /////

23        [2]  Plaintiff ultimately withdrew the full balance of his account

24 in the form of a cashier's check on Friday, March 19, 2004.  The
   events of that day involved a verbal disagreement between plaintiff

25 and defendant's staff and ended with the closing of plaintiff's
   checking account and plaintiff being escorted from defendant's

26 property by local police.

5

1    Plaintiff also complains that defendant put a temporary

2  "hold" on his checking account.  Defendant explains that it indeed

3  put a temporary hold on plaintiff's account on March 13, 2004,

4  following his two $3,000 deposits in order to verify the availability

5  of the funds.  Defendant explains that its decision to take this

6  action was prompted by the somewhat unusual history of plaintiff and

7  plaintiff's wife depositing cash and writing checks on their checking

8  accounts at U.S. Bank and Bank of America, respectively.  Defendant

9  contends that bank personnel suspected that the couple's practices

10 were indicative of "check kiting."[3]  In any event, plaintiff's

11 argument in this regard does not save his action.  The temporary hold

12 was authorized by the terms of the deposit account agreement between

13 plaintiff and defendant.[4]  Further, on Tuesday, March 16, 2004, the

14 temporary hold was released after the deposited funds were verified

15 /////

16 _____

17       [3]  As one court has explained:

18           Check kiting involves the knowing drafting and
            depositing of a series of overdraft checks
19           between two or more federally insured banks with
            the purpose of artificially inflating bank
20           balances so that checks can be drawn on accounts
            that actually have negative funds.  If timed
21           correctly, the bank will be prevented from
            discovering that the accounts are overdrawn and
22           will be tricked into honoring checks drawn on
            accounts with insufficient funds.  By repeating
23           this scheme over a period of time a person in
            essence may obtain an interest-free loan.

24 United States v. LeDonne, 21 F.3d 1418, 1425 n.2 (7th Cir. 1994)
   (citations omitted).
25

26       [4]  These hold provisions appear at page 31 of the agreement
   under the heading "Longer Delays May Apply."

1   and defendant made the necessary funds available to plaintiff in

2   compliance with the EFAA and its accompanying regulations.[5]

3          For all of these reasons, the court will recommend that

4   defendant's motion for summary judgment be granted as to the second

5   amended complaint's third cause of action.

6          If the above recommendation is adopted, only plaintiff's

7   fourth, fifth, sixth and seventh causes of action will remain.  Those

8   causes of action are state law claims for breach of implied contract,

9   breach of the covenant of good faith and fair dealing, intentional

10  infliction of emotion distress and negligent infliction of emotional

11  distress, respectively.  "Under 28 U.S.C. § 1367(c)(3) a district

12  court may elect, in its discretion, not to exercise supplemental

13  jurisdiction over state claims if it has dismissed the original

14  jurisdiction federal claims."  <u>Binder v. Gillespie</u>, 184 F.3d 1059,

15  1066 (9th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1154 (2000) (citing <u>Fang</u>

16  <u>v. United States</u>, 140 F.3d 1238, 1241 (9th Cir. 1998) and <u>Voight v.</u>

17  <u>Savell</u>, 70 F.3d 1552, 1565 (9th Cir. 1995)).  Where, as here, all

18  federal claims are dismissed before trial, the balance of relevant

19  factors points toward declining to exercise jurisdiction over the

20  remaining state law claims.  <u>Gini v. Las Vegas Metropolitan Police</u>

21

22          [5]  The precise details regarding plaintiff's history of
    deposits; defendant's decision to put a hold on plaintiff's account;
23  and the bank's decision to release that hold on Tuesday, March 16,
    2004 -- as opposed to Monday, March 15, 2004, when the bank
24  presumably learned that plaintiff's recent deposits were in cash and
    thus could not be part of a check-kiting scheme -- are unclear.
25  Nevertheless, plaintiff's sole federal claim is based on an alleged
    violation of the EFAA and its accompanying regulations, and as
26  explained above, no such violation occurred under the undisputed
    facts.

Department, 40 F.3d 1041, 1046 (9th Cir. 1994); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992).  Under these circumstances, the undersigned will further recommend that the district court decline to exercise its supplemental jurisdiction to adjudicate plaintiff's state law claims and that those claims be dismissed without prejudice.

        For the reasons set forth above, the undersigned HEREBY RECOMMENDS that defendant's motion for summary judgment be granted as to plaintiff's sole remaining federal cause of action and that the state law claims be dismissed without prejudice for lack of federal jurisdiction.

        These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 3, 2005.

                              Dale A. Drozd
                         _____
                              DALE A. DROZD
                         UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.prose\portnoy1850.f&r.msj